## JOHNSON, Respondent, v. BRISCOE, Appellant.

### St. Louis Court of Appeals, February 16, 1904.

1. **HUSBAND AND WIFE: Necessaries: Authority of Wife to Bind Husband.** Where a husband and wife are living together contentedly and he is providing for the wants and comforts of his family including herself, without complaint from them, the power of the wife to pledge her husband's credit for any article purchased must rest upon an agency either express or implied.

2. ——: ——: ——. Where the husband was a farmer of moderate circumstances and provided, so far as it appears, for the necessaries of his family, without complaint, in an action for the price of a gold watch purchased by his wife, the question of his liability should be determined, not on the question of the necessity of the article purchased, but of the wife's agency in making the purchase. The necessity of the article bought, the means of the parties, their condition in life, the previous conduct of the husband with reference to the wife's purchases, all enter into the inquiry as bearing on the measure of authority, and the case should be submitted to the jury on such evidence to say whether the wife acted within the scope of her ostensible or actual agency when she bought the watch.

3. ——: ——: ——: **Evidence.** The testimony of a neighbor, that his daughters wore watches, was incompetent.

4. ——: ——: ——: ——. Nor was it competent to show that the defendant's wife milked the cows or did other work about the farm.

Appeal from Lewis Circuit Court.—*Hon. E. R. McKee,* Judge.

REVERSED AND REMANDED.

*Richard J. McNally* and *Blair, Marchand & Rouse,* for appellant.

(1) The court erred in overruling defendant's motion to exclude the testimony of witness, Mr. Brown, in re-cross examination, as to the milking of the cows and

the work that Mrs. Briscoe may have done and performed around the house; and asked to be stricken out because incompetent, irrelevant and immaterial. The court erred in giving instruction "A" on its own motion, because it does not correctly declare the law. The husband, and not the neighbors, controls and adopts his manner and style of living. Santer and Adams v. Scrutchfield, 28 Mo. App. 150; Raynes v. Bennett, 114 Mass. 424; Droege v. Droege, 52 Mo. App. 84. (2) The undisputed evidence shows that the defendant was a farmer in very moderate circumstances, involved in debt—a mortgage of a thousand dollars on the homestead as well as $300 other debts—unusually plain and retiring in his style and manner of living; that he and his wife visited very little and entertained less; that he worked hard on his farm, doing practically all his farm work alone; that his wife "had not a dollar" when they were married; that plaintiff knew, at the time of the sale of the watch to defendant's wife, defendant's circumstances, his rank, station in life, social position and manner of living. The peremptory instructions, therefore, should have been given. Harding v. Hyman, 54 Ill. 434; 9 Am. & Eng. Ency. of Law (1 Ed.), 831; Peters v. Fleming, 6 Mees & Welsby 42; Bevier v. Galloway, 71 Ill. 517.

*Clay & Johnson* for respondent.

(1) The appellant's assignment of error No. 2, is not well taken. It was proper matter to go to the jury tending to show that the purchase of the watch by defendant's wife was reasonable for the wife of one circumstanced, situated and surrounded as defendant's wife was, and was necessary and proper to equal her in adornment to her neighbors. Sauter & Adams v. Scrutchfield, 28 Mo. App. 150; Schouler's Domestic Relations (4 Ed.), sec. 61, pp. 61, 62 and 63. (2) The court did not err in giving instruction "A" on its own motion.

The instruction correctly declares the law. Barr et al. v. Armstrong, 56 Mo. 577-589. (3) The wife's necessaries are such articles as the law deems essential to her health and comfort; they are determined, both in kind and amount, by the means and social position of the husband and wife, and must therefore vary greatly among different grades and at different stages of society. So necessaries today are not what they were fifty years ago. 1 Addison on Contracts, sec. 173, pp. 267, 268, 269, Morgan's Edition; Miller v. Brown, 47 Mo. 504. (4) The law expects from the husband some exercise of his marital control; therefore, when a husband living with his wife, sees her attired in costly dresses and indulging in expensive ornaments, and fails to manifest his disapprobation, and does not return them or cause them to be returned, he adopts his wife's act and renders himself answerable.

GOODE, J.—This controversy is over the purchase price of a gold watch which was bought by the defendant's wife from the plaintiff, a dealer in general merchandise in the town of Argola, in Lewis county. A long account, ranging over a year or two and made up of items of merchandise purchased and payments made by the defendant, was filed. The defendant paid for all the items of the bill except the watch. He refused to pay for that, asserting that it was bought by his wife and without authority.

The defendant is a farmer in moderate circumstances; worth four or five thousand dollars. He had been married sixteen years when this litigation arose and had two daughters. So far as the evidence discloses he and his wife got along without trouble; his provision for his family of food, clothing, comforts and conveniences was like that of other farmers of the vicinity and suitable to his estate and social degree. As we gather, the defendant and his family are people of average means and station, of respectable conduct and enjoy the esteem of

their neighbors. Briscoe had been dealing with Johnson for several years and Mrs. Briscoe was in the habit of buying household supplies, clothing and such other articles as the family needed, on her husband's credit; all of which he had paid for without complaint until the watch was bought. There was no testimony to show that Mrs. Briscoe's purchases had included, previously, jewelry or other articles of an ornamental kind. A farmer who lived near the defendant's home was permitted to testify, against the objection of the defendant, that his daughters carried watches. A great deal of testimony was introduced to show the circumstances of the defendant and the station in life occupied by his family, the purport of which has been stated above.

Under the instructions given to them the jury returned a verdict for the plaintiff and the defendant appealed.

This instruction will illustrate the rule for ascertaining the defendant's responsibility, given to the jury:

"If you find from the greater weight of the evidence that the watch purchased by defendant's wife of plaintiff, and charged to defendant, was necessary and proper to equal her in adornment to her neighbors or the women generally of her neighborhood of her condition and standing in life and society, then it would be a necessity in the meaning of the law and your verdict should be for the plaintiff, otherwise it should be for the defendant. The question is not what defendant would consider necessary and would willingly provide. The question is under all the circumstances and surroundings, and associations, was the purchase reasonable for the wife of one circumstanced, situated and surrounded as defendant had surrounded, circumstanced and placed his wife; was it reasonably necessary for her comfort and pleasure, under the style or mode of life adopted and chosen by her husband."

It is impossible to collect from the books a theory of the husband's liability in cases like this and a rule

of decision applicable under all circumstances. The power of a wife to pledge her husband's credit is rested sometimes on his legal obligation, arising from the conjugal relation, to provide her with necessaries. Sauter v. Scrutchfield, 28 Mo. App. 150; Cunningham v. Reardon, 98 Mass. 538; Raynes v. Bennett, 114 Mass. 424; Arnold v. Allen, 9 Daly 198; Cromwell v. Benjamin, 41 Barb. 558; Reeve, Domestic Relation (4 Ed.), 114. In other cases the courts have preferred to found the wife's power on an agency, express, implied or presumed, by virtue of which she may bind the husband to pay for articles she buys on his credit. Jolly v. Rees, 15 C. B. 628; Montague v. Benedict, 3 B. & C. 631; Debenham v. Mellon, 6 App. Cases 24; Lane v. Ironmonger, 13 M. & W. 368; Seaton v. Benedict, 5 Bing. ?8; Reid v. Teakle, L. R. 13 C. B. 627; Atkins v. Curwood, 7 C. & P. 756; Freestone v. Butcher, 9 Car. & P. 643; Harshaw v. Merryman, 18 Mo. 106; Reese v. Chilton, 26 Mo. 598; Shelton v. Hoadley, 15 Conn. 535; Shelton v. Pendleton, 18 Conn. 417; Fredd v. Eves, 4 Harr. 385; Sawyer v. Cutting, 23 Vt. 486; Compton v. Bates, 10 Ill. App. 78. Each theory appears to be properly applied to cases presenting facts of a certain character and to be inapplicable under other circumstances. If a husband refuses to provide for a wife, casts her off or notifies merchants not to sell her goods on his credit, she may, nevertheless, supply herself with necessaries at his expense; but she can not be said to do so as his agent or by his authority except as a legal fiction. But if the two are living together in the family relation, she may possess either actual or ostensible authority to make purchases in his name, and to the extent she has such apparent or real authority he will be bound by the contracts she makes. Obviously, the instance of a wife dwelling apart from her husband, or of one living with a husband who refuses to support her, and the instance of a wife and husband living amicably and co-operating in the

transaction of family affairs, present situations entirely unlike and call, therefore, for the use of different principles of law to determine whether and how far the husband's credit may be pledged by the wife. Take this case: The defendant and his wife were dwelling together contentedly, so far as appears, and he was providing for the wants and comfort of his family, including herself, to their satisfaction, or, at least without complaint. There was no proof that she had ever asked him to get her a watch, or that he was unwilling to get her one. There may be a good reason why, at a particular time, it is inexpedient for a man to purchase such an article, useful but not indispensable, though he may be perfectly willing to purchase it when his affairs permit. He certainly ought to have something to say about what debts he will incur, if he is providing for his family according to his means. Nor is it conclusive of his duty that wives of persons of his fortune and station have watches. That fact by no means determines that he has been so remiss in not providing one for his wife that she may get it on his credit, as a thing of necessity. The case is very different when a man's neglect is a source of distress to his wife, whether she has been abandoned or is living with him. With facts like those we have before us, we think the power of a wife to pledge her husband's credit must rest on an agency, either express or implied. Everything Mrs. Briscoe bought from the defendant was sold to her on the assumption, not that she was unsuitably provided for, or was suffering; but as one having authority to pledge her husband's credit for such articles as she was accustomed to buy. The better decisions declare the law to be that when husband and wife are living together, with the family relation undisturbed, and he is making such provision as excites no comment among their friends and no complaint from her, the question of her right to pledge his credit for any purchase, depends on her actual or ostensible authority, and is to be determined by the rules of the law

of agency. This was the conclusion of very eminent judges in dealing with the subject in cases similar to this one and of recent date, and in which the decisions were reviewed for the purpose of settling the law for the realm of England. Debenham v. Mellon, 6 App. Cases 24; Jolly v. Rees, 15 C. B. 629. It was said in the Debenham case that the adjudications will be found to agree if negligible dicta in the opinions are overlooked; and we have found that most of the American decisions lay down the rule adopted by the English courts. This doctrine is the more expedient, inasmuch as nowadays wives are usually given wide liberty to supply themselves with what they need and there is not much disagreement or litigation over such matters.

The remaining question is, were there facts sufficient to raise an inference in fair minds that Mrs. Briscoe had authority to buy the watch on the defendant's credit, or such an appearance of it as justified the plaintiff in assuming that she had? In the absence of notice to the contrary, the law will imply authority on the part of a wife who is living with her husband, to buy such articles on his credit as pertain to the household arrangements, which are commonly under a wife's care. Ruddock v. Marsh, 1 H. & N. 601; Montague v. Benedict, supra. Or, as has been said, she is presumed to have all the usual authorities of a wife (Johnston v. Sumner, 3 H. & N. 261) or to have authority to purchase necessaries on the husband's credit as his agent (Harshaw v. Merryman, 18 Mo. 106). Such presumptions are not conclusive, but are really inferences of fact; for the husband may prove he made suitable provision for or furnished a reasonable allowance of money to his wife, and this will disprove her authority to bind him; certainly if the plaintiff sold her with knowledge of the facts and perhaps if he was ignorant of them. Jolly v. Rees, Debenham v. Mellon, supra. When the parties are maintaining conjugal relations, the necessity of the wife's purchase may be a material circumstance to prove

her authority. The cases seem to take into account the fortune and social standing of the parties for the same purpose; that is, as tending to prove an authority in the wife, actual or ostensible, to buy the article in dispute on the husband's credit. The ambiguity of the law flows from the uncertain and fluctuating meaning of the word "necessaries." As to necessaries in the sense of the old cases, that is, food, clothing, shelter, medical attendance and such things as every one must have, there can never be a question of a wife's right to provide them if her husband does not. The law holds that, among the various obligations a man may be under, the primary one is to support his family. Hence, our homestead and exemption statutes. And whether a woman is treated by legal fiction or by an inference from the facts, as an agent in the matter, or is regarded as exercising a prerogative attached by the law to the status of wife, is for practical purposes immaterial when the suit is for absolute necessaries sold to her; though the agency notion is then theoretically unsound; for such indispensable things may be furnished at the husband's cost notwithstanding a notice from him not to furnish her. But when necessaries are taken to mean not only articles of strict necessity, but those needed to equalize the wife in comfort to other women of her condition, an element of uncertainty is introduced. For when is a man bound to provide such things and who shall judge if he was delinquent? Shall he, his wife, a merchant, or a jury decide the matter? If the question is remitted in every instance to a jury, to say that the husband is or is not bound, accordingly as they may deem the articles purchased to be necessary or the reverse, a privilege of no defined limits to use her husband's credit will be accorded to the wife and his financial affairs largely taken from his control. The sounder doctrine is that the husband's responsibility does not stand on the question of necessity in a case like this; but, as said, on the wife's agency. The necessity of the article bought, the means

of the parties, their condition in life, and the previous conduct of the husband with reference to the wife's purchases in his name, all enter into the inquiry as circumstances bearing on the measure of authority she has received or appears to have received from him. We hold this case should be referred to the jury on such evidence, to say whether Mrs. Briscoe acted within the scope of her ostensible or actual agency when she bought the watch. The instructions given at the trial went further than this rule and made the defendant answerable if the watch was needed to adorn the defendant's wife like her neighbors and women in the same social sphere.

The evidence as to the daughters of a witness wearing watches was incompetent, as not bearing on the issue and apt to mislead the jury. Raynes v. Bennett, .114 Mass. 424; Compton v. Bates, 10 Ill. App. 78. Neither was the testimony as to defendant's wife milking cows and doing other work about the farm competent.

There is some evidence in this record from which the inference might be drawn that the watch was sold on the credit of Mrs. Briscoe; for one witness swore Johnson said he knew he would get the money; that she was in the habit of paying her bills and of borrowing money to do so. Of course, if the sale was made on her credit and not on that of her husband, she alone is responsible for the price.

The judgment is reversed and the cause remanded for a trial in accordance with this opinion. *Bland, P. J.,* and *Reyburn, J.,* concur.